NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 17, 2013
Decided October 23, 2013

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| No. 12-2885 | Appeal from the United States District Court for the |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Northern District of Illinois, Eastern Division. |
| *v.* | No. 10 CR 789-1 |
| JASON HINTON, *Defendant-Appellant.* | Amy J. St. Eve, *Judge.* |

**O R D E R**

Jason Hinton appeals his conviction for distributing and conspiring to distribute over 50 grams of crack cocaine. Hinton's primary argument, aside from a meritless challenge to his sentence, is that the district court should not have allowed the government to withhold the identity of a confidential informant. At trial, however, he submitted only a bare-bones motion that failed to explain why he needed to know the informant's identity. The district court denied the motion without prejudice and invited Hinton to renew it if he could offer good reasons for compelling disclosure. Since

Hinton never renewed the motion, he waived the opportunity to elaborate on the need for disclosure, and therefore we will not consider his new arguments on appeal. The district judge did not abuse her discretion by demanding more explanation from Hinton, so we affirm.

The bulk of the evidence against Hinton at trial consisted of recorded phone calls between himself and a confidential informant known only as "Chuck." In these calls Hinton agreed to sell about nine ounces of crack cocaine to Chuck, arranged a meeting between Chuck and Winston Martin (Hinton's runner and future codefendant), and followed up after the sale to see if Chuck was satisfied. All of these calls were played for the jury, and an FBI agent specializing in voice identification testified that the voice on the calls was Hinton's. As additional identification evidence, in the phone calls Hinton and Chuck repeatedly used Hinton's nickname, "Jay Cool," which was tattooed on Hinton's forearms.

Before trial began Martin filed, and Hinton adopted, a "Motion to Produce Confidential Informant" requesting disclosure of Chuck's identity. The motion was two and a half pages long and cited only two cases, *Roviaro v. United States*, 353 U.S. 53 (1957), and *United States v. Tucker*, 552 F.2d 202 (7th Cir. 1977). The motion stated that because "[t]he Confidential Informant is the only witness in a position to amplify or contradict the testimony of [the agents] claiming to have controlled the transaction, and witnessed conversations occurring during the transaction … [,] disclosure of the identity of the Confidential Informant is required." The district court denied the motion without prejudice, finding that it presented only "undeveloped and conclusory arguments." The court explained that the motion failed to show why disclosure would be helpful to the defense and failed to apply the relevant factors to the specific facts of the case, then invited Martin and Hinton[1] to file a renewed motion if they "obtain[ed] additional information and ha[d] a good faith basis to renew." Hinton never renewed the motion, but he argues on appeal that the court erred in denying his initial motion.

---

[1] In fact, the court's order explicitly applied only to Martin and never even acknowledged that Hinton joined the motion. Because the judge never made a ruling applicable to Hinton, and Hinton never requested one, it would seem that Hinton waived his right to challenge the decision on appeal. *See United States v. Taglia*, 922 F.2d 413, 416 (7th Cir. 1991) ("If a motion is not acted upon, a litigant had better renew it. He may not lull the judge into thinking that it has been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of the forgotten motion."). But the parties have argued the case as though the judge's ruling applied to both Martin and Hinton, so the government appears to have waived the waiver. We will proceed on the assumption that when the judge invited "Defendant" to refile, she really meant to invite *both* defendants.

The so-called "informer's privilege" allows the government to withhold the identity of confidential informants. *See Roviaro*, 353 U.S. at 59. The privilege encourages people to cooperate with law enforcement by protecting their anonymity, *see id.*, since many informants would face severe retribution if exposed. But the privilege is not absolute and gives way if the informant's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60–61. In deciding whether to order disclosure, judges may not rely on absolute rules; instead, they must carefully balance the public's interest in protecting informers against the defendant's need for disclosure in light of "the particular circumstances of each case." *Id.* at 62. We review this fact-sensitive balancing only for abuse of discretion. *See United States v. McDowell*, 687 F.3d 904, 911 (7th Cir. 2012).

Hinton's perfunctory motion did not address any of the "particular circumstances" of his case. He relied instead on quotations from *Roviaro* and *Tucker*, summarizing the law but failing to show how these cases applied to the facts at issue here. Even when stating that Chuck was "the only witness in a position to amplify or contradict the testimony of [the agents] claiming to have controlled the transaction," Hinton was simply parroting *Roviaro*, *see* 353 U.S. at 64 (noting that informant was "[t]he only person … who could controvert, explain or amplify" the agents' testimony), without addressing any of the factual differences between that case and his own. True, we have suggested that "the role of the confidential informant is an important factor to consider when determining whether that informant's identity need be disclosed," and that disclosure may be required "where the confidential informant was the sole participant, other than the defendant, in the transaction charged." *United States v. Harris*, 531 F.3d 507, 515 (7th Cir. 2008). But we have never held that this factor is conclusive or that balancing is unnecessary anytime the confidential informant was a substantial participant in the underlying transaction. *See, e.g.*, *McDowell*, 687 F.3d at 911–12 (finding that a participating informant's identity could be withheld). Indeed, any such rule would violate the principle of *Roviaro*, which requires case-by-case analysis rather than categorical rules.

On appeal Hinton has elaborated on his trial motion by discussing aspects of his case about which Chuck might have testified. But Hinton had the opportunity to make all these arguments in the trial court—in fact, he had two opportunities since the trial judge told him to renew his motion if he could provide additional support for it. Hinton failed to renew the motion and therefore waived his opportunity to make these arguments on appeal. *Cf. Jenkins v. Keating*, 147 F.3d 577, 581 (7th Cir. 1998) ("Here, the 'ball was in Jenkins' court' to renew his challenge to the court's motion *in limine* ruling and demonstrate how [the] testimony might have been relevant … . He cannot now

'pull a rabbit out of his pocket' and claim reversible error on the court's *in limine* ruling to bar [the] testimony."); *United States v. Addo*, 989 F.2d 238, 242 (7th Cir. 1993) ("[T]he record reflects that the defense was clearly given the opportunity to raise the matter again before the trial judge and failed to do so. Accordingly, the defense may not challenge the merits of this ruling on appeal.").

We conclude that there was no abuse of discretion in denying Hinton's motion. The judge was entitled to ask for more facts in order to perform the case-specific balancing demanded by *Roviaro*. Moreover, the trial judge pointed out the many deficiencies of Hinton's motion and then invited him to renew it if he could identify a good-faith basis. Hinton ignored this invitation. We reject his attempt to elaborate on the original motion for the first time on appeal.

Hinton also argues that his sentence was unreasonable. He concedes that the district court correctly calculated a Sentencing Guidelines range between 121 and 151 months and that his within-guidelines sentence of 132 months is presumed reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007). He attempts to rebut the presumption by showing that the district judge unreasonably applied the sentencing factors listed in 18 U.S.C. § 3553(a). We review the reasonableness of the sentence under an abuse-of-discretion standard. *See United States v. Annoreno*, 713 F.3d 352, 359 (7th Cir. 2013).

The thrust of Hinton's challenge is that some arguably similarly situated defendants received lower sentences than he did even though § 3553(a)(6) requires judges to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." But we have repeatedly held that "[c]hallenging a within-range sentence as disparate is a 'pointless' exercise," *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012), because "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly," *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). In other words, the district court properly accounted for this factor by sentencing Hinton within the guidelines range, and the sentence is not unreasonable merely because the court strayed from the guidelines when sentencing *other* defendants.

Hinton further argues that the sentence is unreasonable in light of his criminal history and personal characteristics because most of his 17 prior convictions are more than a decade old. The district judge reasonably concluded that Hinton's lengthy criminal record, which includes two drug-related arrests while awaiting trial in this very case, did not warrant a lower sentence. *See United States v. Smith*, 721 F.3d 904, 908

(7th Cir. 2013) ("Such behavior does not display personal circumstances that place his offense outside the heartland of cases warranting the admittedly harsh penalties associated with drug offenses … ."). If anything, Hinton's record shows that his prior stints in jail have so far failed to deter him from dealing drugs, heightening the need for incapacitation and a lengthy sentence.

AFFIRMED.