**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0393n.06

Case No. 17-6112

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Aug 06, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) | |
| RICHARD A. SOUDERS, | ) ) | |
| Defendant-Appellant. | ) ) | |

Before: MOORE, THAPAR, and NALBANDIAN, Circuit Judges.

**JOHN B. NALBANDIAN, Circuit Judge.** Over a period of several days, Richard A. Souders produced several sexually explicit images of his seventeen-month-old daughter, which he traded online for additional child pornography. One of the individuals with whom he attempted to trade the images turned out to be an undercover agent. As a result, Souders was charged with multiple counts of producing, transporting, and receiving child pornography. He pleaded guilty to all counts, and the district court sentenced him to 60 years in prison. Souders contends that the sentence is both procedurally and substantively unreasonable because the district court did not accurately consider his lifespan as a forty-year-old man when it imposed an "effective life sentence." Because we find no error in the sentence, we affirm.

**I.**

As the district court observed, "this is really a very, very sad case." R. 86, Sentencing Hr'g Tr. at 71, PageID 469. In June 2014, Richard Souders created multiple pornographic images of his

seventeen-month-old daughter and shared them on the Internet. The images depict his infant daughter undressed and lying down, revealing her vaginal area. Some of the photos show Souders spreading his daughter's vagina open with his fingers, while another depicts Souders touching his own genitalia against hers. Souders emailed the images to three different individuals—one of whom was an undercover agent.

The undercover officer traced the photographs to Souders' address in Tennessee. When two agents arrived at his house, Souders confessed and voluntarily provided them access to his phone and online account to perform a search. The agents later obtained a search warrant for his email account and seized multiple phones and camera equipment. In addition to the pornographic images Souders created, they discovered two videos and 106 images of child pornography he apparently received from others. As a result, Souders was charged with four counts of producing child pornography, seven counts of transporting child pornography, and one count of receiving child pornography. He pleaded guilty to all charges.

The presentence report calculated Souders's criminal history category as I and his offense level as 48—five levels above the highest level in the sentencing table in the Unites States Sentencing Guidelines. His offense level included a 3-point reduction for acceptance of responsibility, due to his cooperation and guilty plea. The resulting recommendation was a life sentence, which was adjusted downwards to 280 years because of the statutory maximums. Souders made several objections to the report, all of which were overruled or voluntarily withdrawn at the sentencing hearing, and none of which are on appeal here.

At the sentencing hearing, the district court acknowledged receipt of the sentencing report and heard arguments from counsel on various objections to the report. Souders then presented a witness, psychiatrist Bradley Freeman, to testify regarding his evaluation of Souders—specifically

about Souders' risk of recidivism. Freeman testified that Souders was a "low risk." On cross-examination, however, Freeman admitted that his opinion was based primarily on the defendant's own self-reporting without any tools to monitor the reporting for accuracy and honesty. Freeman acknowledged the pitfalls of this kind of evaluation given that sex offenders are not typically upfront about their histories and it would be "unusual" for someone who has not yet been sentenced to be forthcoming about his past conduct. Following Freeman's testimony, the district court heard final arguments from counsel, as well as a victim-impact statement from the infant's mother and an allocution from Souders himself. The Government asked for a 70-year sentence, which matched the below-Guidelines recommendation from the probation office. Souders asked for 30 years.

After hearing arguments from counsel, the district court announced the sentence. The court began by noting how "very, very sad" the case was, and it admonished Souders to take full responsibility for his actions and "come to grips with what [he's] done." R. 86 at 71–72, PageID 469–70. "It's not the medication, it's not Satan, it's you, Mr. Souders." *Id.* at 72, PageID 470. The court then discussed the factors listed in 18 U.S.C. § 3553(a). It noted first that this was "one of the more serious cases" to come before the court—"almost beyond imagination." *Id.* The court focused on specific deterrence as a critical component of the sentence, stating "[m]y sentence can and will deter you from committing these crimes again. I don't question your good will in wanting to turn your life around. *But that is something we don't take a chance on*." *Id.* at 72–73, PageID 470–71 (emphasis added). And the court spoke to the need of a sentence that adequately punishes Souders for his conduct and "vindicate[s] the pain and trauma [he] caused [his victim]." *Id.* at 73, PageID 471. After this brief explanation, the district court announced a below-Guidelines sentence of 60 years. *Id.*

In doing so, the court made several remarks about whether Souders would ever be released from custody. Those brief comments represent the heart of Souders' appeal:

> I think an appropriate sentence is one that's going to keep you in the penitentiary for probably most of your life, but will not be a -- a death sentence, if you're lucky.
>
> I'm going to sentence to you a period of 60 years' custody in total, and I'll break that down in a minute or two. Even if you're a model prisoner and with good time, you're going to be a 90-year-old man or close to it when you are released from the penitentiary. You're not going to want or even think the same way about your sexual drives and attitudes that you do right now.
>
> I offer you that ray of hope because I think every man should have some ray of hope, but this sentence will reflect all the reasons why I think you should receive a significant sentence and, at the same time, will not give you an arbitrary number that would reflect you staying in prison long after, at the very high end, your normal life expectancy would have expired.

*Id.* at 73, PageID 471. After announcing the sentence, the district court gave the parties one last opportunity to raise an objection. Souders' counsel responded with only a perfunctory objection, stating, "I think I'm required as a condition precedent to an appeal to make an objection to the sentence based upon *United States v. Bostic*." *Id.* at 77, PageID 475. He did not specify further.

Souders' appeal comes in two parts. He first challenges his sentence as procedurally unreasonable on the theory that the district court selected the sentence by relying on clearly erroneous information about his life expectancy. The district court, he argues, intended to impose a sentence that was shorter than his likely life expectancy but mistakenly believed that number was around 90 years. He also challenges his sentence as substantively unreasonable on similar grounds. He contends that an "effective life sentence" is substantively unreasonable for the crimes he committed. Both arguments lack merit.

**II.**

We turn first to the procedural argument.[1] Souders contends his sentence was procedurally unreasonable because the district court selected it based on the clearly erroneous assumption that his life expectancy was 90 years or higher. As Souders puts it, "the district court accidentally gave Souders a sentence *longer* than his life expectancy when he wanted to give him one that was *shorter*." Appellant's Br. at 15. This claim is rooted in the comments by the district court indicating the sentence would "probably" incarcerate him for most of his life, but would give him a "ray of hope" that he might live to be released. R. 86 at 73, PageID 471. Had the district court known his life expectancy is closer to 79 years and not 90, Souders argues, it would have chosen a different sentence.

A sentence is procedurally unreasonable if it is "based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). Souders "must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence." *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990)). His argument raises three questions, only one of which we must answer today. First, did the district court assume his life expectancy was around 90 years? Second, was that assumption "materially false or unreliable?" And third, was it an "'important factor' in calculating" his sentence? *See id.* at 518. Our inquiry ends with the first question.

---

[1] Souders also characterizes his procedural challenge as a separate claim for a violation of his due process rights. He is partially correct. A sentence is procedurally unreasonable if the court relies on clearly erroneous information because doing so is "a violation of due process." *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017). There is no difference between these claims.

Ordinarily, we would review this kind of purported error for abuse of discretion. *See United States v. Taylor*, 800 F.3d 701, 713 (6th Cir. 2015). But Souders failed to raise his objection during the sentencing hearing, even after the district court offered the opportunity. R. 86 at 77, PageID 475. Because of this, he "forfeit[ed] the argument and may obtain relief on appeal only if the error is 'plain' and 'affects substantial rights.'" *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) (quoting Fed. R. Crim. P. 52(b)). Under plain-error review, Souders must "show (1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 386 (internal quotations omitted).

The basic premise of his argument relies on a mischaracterization of the district court's comments. He incorrectly contends that the court "stated it believed that [his] life expectancy was longer than [his] sentence, thereby indicating it believed his life expectancy was longer than age 90." Appellant's Br. at 14. But the district court said no such thing. The court explained that his sentence would not be an arbitrary number that kept him incarcerated "long after, at the very high end, [his] normal life expectancy." R. 86 at 73, PageID 471. Contrary to Souders' claim, this statement implicitly recognizes that the sentence might run longer than his normal life expectancy—but it will not run *long after the very high end*.

Context clarifies this issue significantly. The Guidelines-recommended sentence for Souders was 280 years. That recommendation is unequivocally an effective life sentence because no individual serving 280 years has a "ray of hope" of ever being released from incarceration. With this in mind, the district court's comments make perfect sense. It wished to select a sentence that—while significant—would not foreclose hope of release entirely. Or as the Government puts it, "[b]ecause no one lives to be say, 120 years old, the court would not impose a 95-year sentence

that gave him no hope whatsoever of being released[.]" Appellee's Br. at 17. And the district court did no such thing. Not even Souders contends that it would be impossible for him to live to age 90—only that it might be unlikely.

Souders pushes back on this conclusion by focusing on some carefully excerpted language from the court's remarks, urging us to parse the exact meaning of a few particular phrases to find error. He leans on the fact that the district court stated its belief that "an appropriate sentence is one that's going to keep you in the penitentiary for probably most of your life," which Souders contends demonstrates the court did not intend for his sentence to keep him incarcerated for his *entire* life. Does this language necessarily mean the court intended to impose a sentence shorter than his normal life expectancy, as Souders claims? Notably, Souders cuts off the end of the court's statement, which indicated that the sentence would not be a "death sentence," but only "*if [he's] lucky*." R. 86 at 73, PageID 471 (emphasis added).

This kind of dissection of the district court's words is ultimately unnecessary. Even if Souders was correct that the district court assumed his life expectancy was around 90 years, Souders failed to preserve any evidence in the record that could give rise to a finding that the court's conclusion constituted plain error. Souders cites statistics available online, to which the Government responds with its own set of numbers, but it does not appear that any of this information was provided to the district court before or during the sentencing hearing. A party cannot "introduce new facts in its brief on appeal," *see United States v. Bonds*, 12 F.3d 540, 552 (6th Cir. 1993), and we will not find that a district court committed plain error based on factual information the parties never provided. This is, in fact, precisely why the plain-error standard exists. Had Souders raised this objection at the sentencing hearing, the district court could have clarified its remarks or taken evidence on the issue. But the failure to object deprived the court of

an "opportunity to correct its purported error" and, perhaps just as critically, left the court of appeals without "a more complete record to review." *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009). In light of this, we cannot find plain error here.

## III.

Souders also challenges his below-Guidelines sentence as substantively unreasonable. Distilling his claim to its core, Souders objects to receiving what he believes is an effective life sentence for committing crimes that are categorically less serious than others—particularly after admitting guilt and accepting responsibility for what he did. But Souders' objections have little to do with his particular case or the factors that typically go into assessing the reasonableness of a sentence. Instead, he ultimately argues that the Guidelines are arbitrary for all cases involving the production of child pornography. Reply Br. at 8. This kind of policy disagreement, however, is not sufficient by itself to demonstrate the district court abused its discretion by arbitrarily selecting his sentence. *See United States v. Smith*, 881 F.3d 954, 960 (6th Cir. 2018), *petition for cert. filed*, No. 17-8857 (May 10, 2018); *see also United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007).

"The essence of a substantive-reasonableness claim is whether the length of the sentence is greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010) (internal quotations omitted). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable weight to any pertinent factor." *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). But a sentence is presumptively reasonable if it falls within the applicable guidelines range, *Vonner*, 516 F.3d at 389, and in a case such as this, where the district court

entered a sentence below the recommendation, the "task of persuading us that the more lenient sentence . . . is unreasonably long is even more demanding." *See United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). As such, defendants challenging a below-Guidelines sentence as substantively unreasonable "bear a heavy burden." *Greco*, 734 F.3d at 450.

Before getting to the heart of his argument, Souders first attempts to transform his procedural argument into a substantive one. Relying on *United States v. Hughes*, 283 F. App'x 345 (6th Cir. 2008), Souders argues his sentence is substantively unreasonable because the court based its sentence on speculation and "failed to consider the full spectrum of information relevant to a particular factor," namely, Souders' actual life expectancy. Reply Br. at 2. But as explained above, Souders mischaracterizes the district court's statements when he argues the court intended to incarcerate him for a period shorter than his average life expectancy. The court did not express such an intent, and *Hughes* thus does not apply.[2]

The core criticism Souders lodges against the substantive reasonableness of his sentence rests on a much broader set of arguments. He contends that his sentence is substantively unreasonable because the district court failed to consider five supposed-principles of sentencing that he argues weigh against imposing an effective life sentence for his crimes.[3] Appellant's Br. at

---

[2] Moreover, *Hughes* involved a government challenge to a sentence that varied significantly downward from the Guidelines range, thereby removing the presumption of reasonableness that would otherwise apply. *See Hughes*, 283 F. App'x at 349–50. But where the party challenging the sentence benefited from a variance, like the defendant here, that party bears a "heavy burden" of demonstrating that the sentence is substantively unreasonable. *See Greco*, 734 F.3d at 450. Accordingly, Souders' reliance on *United States v. Poynter*, 495 F.3d 349 (6th Cir. 2007), is similarly misplaced. There, the defendant challenged a sentence that was a 206 percent upward variance from the top of the Guidelines range. *Id.* at 349–50, 353.

[3] Before discussing Souders' substantive argument, we caution that there is rarely—if ever—a circumstance where the fact that a sentence might mean a particular defendant will die in jail, *i.e.*, an "effective life sentence," carries independent sentencing significance. *See United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008); *see also United States v. Joubert*, 778 F.3d 247, 256–257 (1st Cir. 2015) (rejecting argument that an "effective life sentence" for a 60-year-old is

17–24. First, he notes that he did not commit murder, which is the crime most deserving of serious punishment. Second, he submits that child sex abuse should not necessarily trigger a life sentence. Third, he objects to receiving a total sentence longer than the statutory maximum of any individual sentence. Fourth, he claims that an effective life sentence "serves no useful purpose" because of the declining likelihood of recidivism. And fifth, he contends he was not adequately credited for accepting responsibility. None of these principles—taken individually or together—cast doubt on the substantive reasonableness of his below-Guidelines sentence. Put simply, we agree with the Government that "while each proposition is fairly uncontroversial in the abstract, its applicability to this case is somewhat dubious." Appellee's Br. at 20.

It appears that Souders' real concern here is the way that the Guidelines apply in these kinds of cases generally. Reply Br. at 8. And he proffers each of his five principles to reinforce this point. But his argument is misplaced and runs directly into the presumption of reasonableness that applies to sentences within—or as in this case, below—the Guidelines. *See Vonner*, 516 F.3d at 389. None of his five principles actually address whether the court "selected his . . . sentence arbitrarily, based it on impermissible factors, or unreasonably applied the proper factors." *Smith*, 881 F.3d at 960. In other words, none of Souders' arguments directly speak to the relevant inquiry:

---

substantively unreasonable and explaining that multiple different factors should inform a district court's determination). To be sure, advanced age (and relative youth) can be a relevant sentencing consideration, so much of what Souders and other offenders argue about long sentences for older offenders is already accounted for. *See, e.g., United States v. Payton*, 754 F.3d 375, 379 (6th Cir. 2014); U.S.S.G. § 5H.1.1. But giving independent, sentencing significance to the concept that an offender might or will die in jail carries the risk of unintended consequences and raises serious questions. Indeed, *every* older offender can argue for a lower sentence on this basis—a broader policy consideration that seems to be beyond the purview of this court. And query whether only offenders who commit a certain class of crimes, like white collar crimes, might disproportionately benefit because such crimes tend to be committed by older offenders? *See generally* United States Sentencing Comm'n, *2017 Sourcebook of Federal Sentencing Statistics*, Table 6 (Age of Offenders in Each Primary Offense Category), Table 7 (Age, Race, & Gender of Offenders).

whether the district court reasonably evaluated and applied the § 3553(a) factors with respect to his individual sentence.

His first principle, for example, is that murder deserves the most severe punishment, citing *Graham v. Florida*, 560 U.S. 48 (2010), which addressed the unique constitutional limitations on punishing juvenile offenders. *Id.* at 68. It has no bearing here, where Souders was an adult at the time he committed his crime. He nonetheless attempts to parlay this generic principle into an argument that an "effective life sentence" is unreasonable for his crimes because it leaves no room to punish categorically worse offenders. But that is simply not true. Crimes like murder generally do carry harsher sentences. Souders did not receive capital punishment or a life term here, and his supposed "life sentence" is a function of his age and culpable conduct. To the extent that Souders is attacking the relative punishment attached to his criminal conduct versus arguably more serious or egregious criminal conduct, we cannot reject a sentence as substantively unreasonable on grounds that would categorically apply to a host of other recommendations under the Guidelines. At a minimum, doing so would gut the presumption of reasonableness and impermissibly substitute our own policy judgments for that of the district court and Congress. *See Smith,* 881 F.3d at 960; *United States v. McNerney*, 636 F.3d 772, 777–78 (6th Cir. 2011).

The second principle has even less applicability here. Souders argues that sexual abuse of a child should not necessarily trigger a life sentence, but no one—not the probation office, not the Government, and not the district court—indicated otherwise. The record lacks any suggestion that a life sentence must be triggered for any crime involving the sexual abuse of a child, nor is there any indication that the court believed his particular case necessarily required a life sentence.[4]

---

[4] The Government notes the inherent contradiction of Souders' claim here. On the one hand, he contends the district court erred because it intended to sentence him to a period shorter than his life expectancy, but on the other hand, it also erred by assuming a life sentence was necessary.

Nor is this point rescued by *United States v. Aleo*, 681 F.3d 290 (6th Cir. 2012). Souders notes that in *Aleo* we reversed a 60-year sentence as substantively unreasonable for a defendant who committed sexual crimes against a child. *Id.* at 293. But he ignores why. In that case, the district court imposed a sentence *two-and-a-half times longer* than the recommendation under the Guidelines, and it did so based on the unjustifiable claim that "the sentencing guidelines could not have envisioned a crime such as Aleo's." *Id.* at 300. As we pointed out at the time, the Guidelines addressed the exact issues the district court raised, which meant there was no "compelling justification for the judge's variance from the guidelines range." *Id.* at 301. That criticism has no bearing here, where the district court varied *downward* from the Guidelines and there is no similar allegation it improperly evaluated the recommendation.

In his third point, Souders argues the district court's sentence is arbitrary because it exceeds the maximum length for any individual crime. For support, he cites *United States v. Martin*, 63 F.3d 1422 (7th Cir. 1995), *abrogated on other grounds by Jones v. United States*, 529 U.S. 848 (2000), a case with no applicability here because it dealt with a specific statute that prohibited life sentences in certain circumstances. *See id.* at 1433–34; *United States v. DiDomenico*, 78 F.3d 294, 298 (7th Cir. 1996) (dismissing a similar argument based on *Martin* as "frivolous"). Otherwise, Souders' argument is simply that the district court should have accepted the statutory maximum of a single instance of his crime, rather than run any of his sentences consecutively. But Souders did not commit a single crime—he pleaded guilty to *four* counts of producing child pornography and *seven* counts of transporting it, in addition to one count of receiving. This also differentiates his case from *Aleo*, which Souders again refers to for support, where the defendant committed only one count of each. *See Aleo*, 681 F.3d at 293. The decision to run sentences consecutively is left

to the discretion of the district court (and is expressly provided for in the Guidelines). *See* U.S.S.G. § 5G1.2(d).

Next, Souders argues that an effective life sentence serves no purpose because of the decline in his risk of recidivism. Here Souders relies on his expert witness, psychiatrist Bradley Freeman, who testified that Souders presented only a "very low" risk of recidivism after age 60. Appellant's Br. at 22. He contends the district court should have relied on this evidence in determining the sentence because "[t]he government provided no proof to discredit that showing." *Id.* Souders is wrong for two reasons. First, the government rebutted the expert's testimony through cross-examination. Freeman, for example, acknowledged the potential unreliability of his own evaluation because it would be "unusual" for a sex offender who has not yet been sentenced to be forthcoming about his past conduct. R. 86 at 42–44, PageID 440–42. Thus, the district court was well within its discretion to doubt the reliability of Freeman's evaluation.

More importantly, Souders is wrong to characterize the risk of recidivism as the only measurement for the usefulness of a sentence. Sentences serve many purposes, some of which are statutorily established in § 3553(a). Deterrence is one, *see* 18 U.S.C. § 3553(a)(2)(B), and the district court indicated it sought to impose a sentence that would make certain Souders would not reoffend. R. 86 at 73, PageID 471. But deterrence is not the only goal of a sentence. As the district court noted, the sentence would also punish Souders for his horrific crimes and vindicate the pain caused to his victim. *Id.*; *see also* 18 U.S.C. § 3553(a)(2)(A). The district court did not abuse its discretion in balancing these factors in this case.

Finally, Souders erroneously claims he was not properly credited for accepting responsibility. Souders is correct that "[t]he Sentencing Guidelines and federal sentencing regime have institutionalized a substantial credit for pleading guilty and accepting responsibility,"

Appellant's Br. at 23, but he ignores that he received such a credit in the form of a 3-point reduction of his total offense level. We cannot find that the district court abused its discretion by properly calculating a 3-point reduction to his offense level for accepting responsibility, particularly in light of the fact that the court ultimately varied downward from the recommended sentence.[5]

Ultimately, Souders makes a policy argument that has little to do with his individual sentence or the § 3553(a) factors. He summarizes his position sharply when he contends that this case illustrates how "in some child-pornography cases the guidelines can be absurdly arbitrary." Reply Br. at 8. Each of his five sentencing principles addresses this same point, which is that he should not receive a substantially longer punishment simply because he committed multiple related crimes—all of which are less severe than homicide or other criminal acts. But "[h]e does not point to any way in which the district court selected his [below-Guidelines] sentence arbitrarily, based it on impermissible factors, or unreasonably applied the proper factors." *See Smith*, 881 F.3d at 960. Instead, Souders contends that the child-pornography Guidelines themselves are substantively unreasonable—a position that runs contrary to the presumption of reasonableness afforded to sentences falling within (or in his case, below) the Guidelines. *See id.*

"[D]efining crimes and fixing penalties are legislative . . . functions," *McNerney*, 636 F.3d at 778 (quoting *United States v. Evans*, 333 U.S. 483, 486 (1948)), although the district courts retain some discretion to deviate from the Guidelines on policy grounds. *See Vonner*, 516 F.3d at

---

[5] We note as well that the comments from the district court suggest it might not have been persuaded that Souders had fully accepted responsibility for his crimes. The district court admonished Souders to "come to grips with what he has done," and specifically rebuffed statements Souders made about why he might have committed his crimes: "It's not the medication, it's not Satan, it's you, Mr. Souders. And I think before you find peace with yourself, and I commend you to start with your baptism, but that's just a start. Before you find peace with yourself, you've got to come to grips with what you've done, take responsibility for it, and going on with your life." R. 86 at 71–72, PageID 469–70.

392; *United States v. Herrera-Zuniga*, 571 F.3d 568, 586 (6th Cir. 2009). When a district court chooses to do so, we, as the court of appeals, "will 'scrutinize closely' its reasons for doing so." *United States v. Bistline*, 665 F.3d 758, 761 (6th Cir. 2012) (quoting *Herrera-Zuniga*, 571 F.3d at 585). But when a district court chooses not to disagree with the Guidelines on policy grounds, we cannot say that it abused its discretion based on our own judgment of "the soundness of the guidelines range." *See United States v. Janosko*, 355 F. App'x 892, 895 (6th Cir. 2009) (citing *Vonner*, 516 F.3d at 392). Thus, "the mere fact that a sentencing court has the discretion to disagree with the guidelines on policy grounds does not mean that it is required to do so"—and that is true no matter how persuasive an appellate court finds the defendant's policy arguments. *Smith*, 881 F.3d at 960 (quoting *United States v. Ekasala*, 596 F.3d 74, 76 (1st Cir. 2010)); *see also United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2009).

Our review today is limited to determining whether the district court abused its discretion by selecting the sentence arbitrarily, basing the sentence on impermissible factors, or improperly considering and weighing the factors under § 3553(a). *Tristan-Madrigal*, 601 F.3d at 633. Souders has not rebutted the presumption that his below-Guidelines sentence is reasonable, and we cannot find the district court abused its discretion in selecting it.

We **AFFIRM**.